IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-03079-M-RJ

| | | |
|---|---|---|
| MARQUEION JAMAL HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WARDEN BULLARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On February 13, 2023, Marqueion Jamal Harrison ("plaintiff"), a North Carolina state inmate at Tabor C.I., filed *pro se* a complaint under 42 U.S.C. § 1983 in the United States District Court for the District of Columbia. See Compl. [D.E. 1].

On February 22, 2023, the Honorable Rudolph Contreras, United States District Judge, ordered that the case be transferred to this court. See Order [D.E. 4] (finding plaintiff's claims arose in this judicial district and that transfer was in the interest of justice).

On March 6, 2023, plaintiff moved for reconsideration. Mot. [D.E. 5] (asking the transferring court to reconsider its order transferring the action, requesting reinstatement of the action in the transferring court, and generally alleging he will not receive "a fair trial" in this court). This motion was docketed both in this court and in the transferring judicial district. See Mot. [D.E. 5], Harrison v. Bullard, et al., No. 1:23-cv-00417-UNA (D.D.C. Mar. 6, 2023).

On April 17, 2023, the Honorable Tanya S. Chutkan, United States District Judge, entered an order in the transferring court denying plaintiff's motion for reconsideration and reaffirming the transfer of the case to this judicial district. See id., Order [D.E. 7] (D.D.C. Apr. 17, 2023).

On May 9, 2023, this court: directed the clerk to docket the transferring court's April 17, 2023, order which rendered moot plaintiff's March 6, 2023, motion for reconsideration; directed the clerk to send plaintiff the § 1983 forms prescribed for use by the court; directed plaintiff to re-file his complaint on the correct forms not later than June 2, 2023; and warned plaintiff that, if he failed to comply with this order in the time allowed, the court would dismiss the action without prejudice for failure to prosecute. Order [D.E. 12].

On May 26, 2023, plaintiff filed a corrected complaint [D.E. 14], documents in support [D.E. 15], a motion to add defendants and statement of claims, Mot. [D.E. 16], and a proposed amended complaint [D.E. 17].

Plaintiff again moved to amend his complaint on May 31, 2023, Mot. [D.E. 19], and on June 12, 2023, Mot. [D.E. 20].

On June 20, 2023, plaintiff moved for a temporary restraining order ("TRO"), see Mot. [D.E. 21], and filed a letter in support [D.E. 22].

Plaintiff again moved to amend his complaint and add a defendant on both August 30, 2023, Mot. [D.E. 24], and on October 30, 2023, Mot. [D.E. 25].

On October 31, 2023, the court denied the motion for a TRO, granted in part the motions to amend, directed plaintiff to file an amended complaint by November 22, 2023, and warned him that the court would not review his prior filings to discern misplaced claims. Order [D.E. 26].

On November 28, 2023, plaintiff filed his amended complaint in compliance with the court's October 31, 2023, order. See Am. Compl. [D.E. 27] (timely mailed on Nov. 22, 2023).

Pursuant to 28 U.S.C. § 1915A, the court now conducts its initial review of the complaint, as amended, and, for the reasons discussed below, dismisses the action for failure to state a claim.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and the court also need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

3

Plaintiff's Amended Complaint:

Plaintiff names as defendants Superintendent/Warden Bullock, Case Manager/Supervisor Ms. Buffkin, Nurse Pamela Roberts, Program Director Mr. Bailey, Case Manager Kyra Rondeau-Murrell, Psychologist Laterriar D. Turner, and Sergeant Turner. Am. Comp. [D.E. 27] at 2–5. As to what rights were violated, plaintiff states, his "right to use the courts, right to be free from cruel and unusual punishment, right to procedural due process, First Amendment, right to receive visits and maintain relationships [sic]." Id. at 6. Plaintiff cites as the dates of occurrence: "June, 22-June, 23., 10-26-23/11-9-23., May 10, 23, 10-4-23/11-3-23/., 6-14-23, 5/12/23 [sic]." Id.

Plaintiff specifically alleges: he was fired from his prison job in retaliation for filing complaints and grievances; he has received no response to his request for information; he has not been paid for work performed or given sentence reduction; his outgoing legal mail "was destroyed and refused to be mailed out [sic]"; he is "being refused case management in the form of programs, job assignments, UNC outreach correspondences, also, to be sent to [his] right custody level [sic]"; he received "disturbances and threats" to his "housing status, life, safety and sentence(s), of which were first excuse of my sentence length and sentence reduction credits, but, now are (SRG) Security Risk Groups [sic]"; he has not received responses from case management or defendants Bullock or Sergeant Turner; he is "being refused to be sent to the SRG Program," an "act [that] cuts off [his] contact and access to the courts, friends, [and] family (visitation list) [sic]"; "I am being refused family visits, but I have a person on my visitation list I do not know, who I believe is the officer(s) who are interrupting and destroying my mail [sic]"; "I have been forced into over 5 PPD skin test[s] in less than a year's time, in threat medical complications, adverse reactions and misdiagnosis [sic]" by Nurse Roberts; on October 26, 2023, "with mental health mixups of an act

4

of referral forms that [Psychologist Turner claims plaintiff] filed, then threatened in [an] attempt of coercion to sign consent forms [sic]"; on June 14, 2023, he was "threatened into signing refusal forms, to cut off dental visits, after three teeth where [sic] broken by dentist [sic]"; defendant Bullock, in failing to respond to plaintiff, "neglects his duty and encourages the illegal acts"; "Mishousing [sic], the threats of acts of assault and attempted, lost of [sic] time, earnings and wages, lost of [sic] job assignments, programs (UNC Outreach Program) tuition, financial aid and fees up to $7,000.00, lost of [sic] contact with friends and family and access to the courts, and dental damages in the form of three broken, damaged teeth and cut dental access, mental and emotional distress, due to the threats of medical and mental health diagnosis [sic]." Id. at 6–7.

Plaintiff cites as his "medical dates:" "June 2022, July 22, Nov 22, Jan. 22, June 23 (TB, PPD Skin test), 6-4-23, 11-9-23 coercion of form signings, 11-15-21 to 6-13-23 dental assaults and refusals, Job termination May 10, 2023, Case management, SRG, job program refusal acts and threats 10/16/23 to current as of now [sic]."

As to his injury, plaintiff states:

> Lost of [sic] job assignment, lost of [sic] and denied contact to family and friends and access to courts. Lost of [sic] time (sentence reduction credits), earnings and wages. Damaged college correspondence material, financial aid and other funds/fees. Dental injuries (in the form of three broken teeth) and refused dental access (to have my teeth repaired), and medical acts of, making before requested attention, to acts of refusal and refused medical services [sic].

Id. at 8.

For relief, plaintiff seeks, *inter alia*, injunctive relief and money damages. Id. at 9.

## Discussion:

Plaintiff's instant complaint is not a model of clarity. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious

5

deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). The second prong requires a prisoner to show that "the officials acted with a sufficiently culpable state of mind." Id. (quotation and emphasis omitted); see also Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

"Deliberate indifference" to a prisoner's "serious medical needs" violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); see Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Nevertheless, a prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (finding a defendant must have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the defendant's] action or inaction."); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (requiring that the prison official knew of and disregarded an "objectively serious condition, medical need, or risk of harm."). Beyond such actual knowledge, the official "must also have recognized that his actions were insufficient to mitigate the risk of

6

harm to the inmate." Iko, 535 F.3d at 241 (quotation marks and citation omitted). A prisoner, however, is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Disagreements over forms of treatment concern medical judgments, not the Eighth Amendment, id., and mere negligence in diagnosis or treatment does not state a constitutional claim, see Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard–a showing of mere negligence will not meet it.").

As an initial matter, plaintiff does not plausibly allege that defendants were personally involved in his purportedly inadequate dental care. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); see Wright, 766 F.2d at 850 (requiring a § 1983 plaintiff to "affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights," but finding insufficient mere knowledge of such a deprivation (internal quotation marks omitted)).

Next, as to his claims regarding the medical care provided by Nurse Roberts and Psychologist Turner, plaintiff does not plausibly allege the deprivation of a basic need that was objectively substantially serious. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; see De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (noting only "extreme deprivations" – i.e. a "serious or significant physical or emotional injury resulting from the challenged conditions" or a substantial risk thereof – satisfy the objective component of an Eighth Amendment conditions-of-confinement claim); see also Baltas v. Clarke, No. 7:20CV00276, 2021 WL 1080516, at *19 (W.D. Va. Mar. 18, 2021) (finding plaintiff failed to allege a tuberculosis test caused a significant injury).

7

Alternatively, even if the purported deprivations were objectively serious, plaintiff's claims against Nurse Roberts and Psychologist Turner amount to mere disagreement with his course of medical treatment, mistaken medical judgment, or, at worst, negligent medical care. See Farmer, 511 U.S. at 835; Estelle, 429 U.S. at 107; Grayson, 195 F.3d at 695; Russell, 528 F.2d at 318–19. Thus, because plaintiff fails to plausibly allege that these defendants knew of and disregarded his serious medical needs, or acted with the requisite culpable state of mind, he fails to satisfy the subjective component of a deliberate indifference claim. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Farmer, 511 U.S. at 837; Jackson, 775 F.3d at 178; De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013); Iko, 535 F.3d at 241; Shakka, 71 F.3d at 166; Wright, 766 F.2d at 850.

Further, because plaintiff does not plausibly allege that the remaining defendants are medical providers, these defendants generally are entitled to rely on provider expertise as to the adequacy of plaintiff's medical care. See Iko, 535 F.3d at 242 ("If a prisoner is under the care of medical experts . . . a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." (quotation omitted)).

Next, to state a cognizable claim under the Due Process Clause of the Fourteenth Amendment, plaintiff must show that government action deprived him of life, liberty, or property. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). A court "first asks whether there exists a liberty or property interest which has been interfered with by the State." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). If so, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Id.

Succinctly stated, plaintiff lacks a constitutional right to educational programming, a prison job, visitation, or any specific custody classification. See Overton v. Bazzetta, 539 U.S. 126, 146

(2003) (holding regulations restricting visitation did not deprive an inmate of basic necessities, or fail to protect an offender's health or safety); Sandin v. Conner, 515 U.S. 472, 484, 487 (1995) (finding inmates only entitled to procedural due process protections for disciplinary proceedings that impose a punishment that either alters "the duration of [a] sentence," or causes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979) (finding inmates lack entitlement to conditional release before expiration of a valid sentence); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (noting no due process protections are required for "prisoner classification and eligibility for rehabilitative programs in the federal system"); Meachum v. Fano, 427 U.S. 215, 225 (1976) (noting custody classification in a state prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts"); Adams, 40 F.3d at 75 ("Prisoners have no right under the Constitution to be held in either protective or minimum custody."); O'Bar v. Pinion, 953 F.2d 74, 82–84 (4th Cir. 1991) (noting "administrative segregation and reclassification . . . are . . . discretionary administrative acts in which an inmate obtains no liberty interest under North Carolina law."); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (noting changes to "prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges . . . are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively."); Riccio v. Cty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by

9

state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution."); Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) (noting that "work assignments of prisoners . . . are matters of prison administration, within the discretion of prison administrators"); see also Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (noting "the Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment'" (citations omitted)); Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988) (finding states have no constitutional obligation to provide basic educational or vocational training programs for prisoners); Carter v. Tucker, 69 F. App'x 678, 680 (6th Cir. 2003) (noting, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." (citations omitted)); United States v. Alkire, No. 95–7885, 1996 WL 166400, at *1 (4th Cir. Apr. 10, 1996) (per curiam) (unpublished) (noting "there is no constitutional or federal statutory right to use of a telephone while in prison").

To the extent plaintiff instead alleges he was denied prison job wages already earned, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984); see Mora v. City of Gaithersburg, 519 F.3d 216, 231 (4th Cir. 2008). Because plaintiff has a meaningful postdeprivation remedy available in state court, see Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983), he fails to state a viable claim as to property deprivation.

Next, plaintiff's bald grievance-related claims also fail. See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) (explaining that, under Adams, 40 F.3d at 75, "inmates have no

constitutional entitlement or due process interest in access to a grievance procedure"), cert. denied, 138 S. Ct. 755 (2018); see also Oliver v. Gray, No. CIV A 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."), aff'd, 360 F. App'x 417 (4th Cir. 2010).

Next, plaintiff's threadbare access-to-courts allegations fail to identify with specificity an actual injury or "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Lewis v. Casey, 518 U.S. 343, 351–52 (1996); see Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006); see also Oliver v. Myers, No. 7:08-CV-558, 2008 WL 5212409, at *4 (W.D. Va. Dec. 12, 2008) (noting that, "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts" (citation omitted)), appeal dismissed, 335 F. App'x 317 (4th Cir. 2009).

The court now turns to plaintiff's retaliation claim. For a First Amendment retaliation claim to survive initial review, plaintiff must plausibly "allege that (1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant[s'] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quotation and alterations omitted), cert. denied, 138 S. Ct. 738 (2018); see also Booker, 855 F.3d at 540, 544.

As to retaliation claims generally, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated

11

such a right," and must also allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74–75.

As noted above, plaintiff lacks a constitutional right to a specific custody classification, a prison job, visitation, or educational programming, and his bare assertions of retaliation amount to mere "labels and conclusions" insufficient to establish the requisite causal relationship between the exercise of his First Amendment rights and defendants' purported adverse action. Cf. Martin, 858 F.3d at 249; see Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Adams, 40 F.3d at 74; see also Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (noting that inmate retaliation claims generally are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." (quotation omitted)).

To the extent plaintiff seeks to raise a supervisory liability claim against defendants, his bald, threadbare allegations fail to state a cognizable claim under the governing standard. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; see Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

To the extent plaintiff's claims instead are premised on defendants' purported violations of prison policy, policy violations that do not result in a constitutional violation do not amount to a viable § 1983 claim. See Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished).

Plaintiff also has not demonstrated entitlement to the requested preliminary or permanent injunctive relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); eBay Inc. v. MercExchange,

12

L.L.C., 547 U.S. 388, 391 (2006) (requiring a movant seeking a permanent injunction to demonstrate "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (noting the Supreme Court has rejected the standard allowing a "plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (quotation omitted)), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam); U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006) (applying same standards for a TRO and a preliminary injunction); see also Taylor v. Freeman, 34 F.3d 266, 268–69 (4th Cir. 1994) (noting courts only grant injunctive relief involving the management of prisons in extraordinary circumstances).

Finally, because this complaint cannot be cured by amendment, dismissal is appropriate. See Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 628 (4th Cir. 2015).

## Conclusion:

For the reasons discussed above, the court DISMISSES the complaint for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915A(b)(1). The clerk shall close the case.

SO ORDERED this 8th day of January, 2024.

RICHARD E. MYERS II
Chief United States District Judge

13